(April 24, 2014)

■ SCAROLA ELLIS LLP, Respondent, v ELAN PADEH, Appellant.
[984 NYS2d 56]—

Judgment, Supreme Court, New York County (Cynthia S. Kern, J.), entered December 27, 2012, which, upon a jury verdict, awarded plaintiff damages for breach of contract related to plaintiff's hourly representation and for unjust enrichment, unanimously modified, on the law, to vacate the award of damages on the unjust enrichment cause of action, to dismiss said cause of action, and otherwise affirmed, without costs.

On April 7, 2003, defendant Elan Padeh retained attorney George Zelma to represent him in connection with a claim against Corcoran, a real estate company for whom Padeh previously worked as a broker. Padeh alleged that Corcoran had breached an oral agreement to pay Padeh his share of commissions earned from several real estate deals. The retainer agreement between Zelma and Padeh provided that Zelma would be paid an initial fee of $5,000 up front, plus a contingency fee of 41% of the sum recovered by lawsuit or settlement of the claim against Corcoran.

In June 2003, Zelma filed a lawsuit on Padeh's behalf against Corcoran and other entities. Corcoran asserted counterclaims against Padeh and also brought a third-party action against The Developers Group, LLC (TDG), Padeh's real estate company.* Because Zelma was a sole practitioner, he asked plaintiff law firm Scarola Ellis LLP (Scarola) to join the case as co-counsel. In an email dated July 2, 2004, Zelma and Scarola entered into a co-representation agreement providing that, depending on the amount of work Scarola did, Scarola would receive up to half of Zelma's 41% contingency fee (i.e., 20.5%) collected in connection with Padeh's claims against Corcoran. Both Zelma and Scarola considered this email to be an enforceable contract.

On August 3, 2006, two years after being brought into the litigation, Scarola entered into a retainer agreement with Padeh. In that agreement, Scarola acknowledged that it had been representing, and would continue to represent, Padeh as co-counsel with Zelma in Padeh's effort to collect money from Corcoran in the pending action. Padeh and Scarola confirmed that Scarola would share in any contingency fee award in the Corcoran ac-

---

* Padeh hired a different law firm to represent TDG on the counterclaims.

tion on the terms previously agreed to between Zelma and Scarola in their July 2, 2004 co-representation agreement. The August 3, 2006 retainer agreement further provided that Padeh would pay, on an hourly basis, for services provided by Scarola that were outside the pursuit of Padeh's claims in the Corcoran action. A handwritten notation specified that the hourly arrangement did not include work by Scarola on issues necessary or in aid of Padeh's claims as plaintiff.

In the course of litigating the third-party claims, Corcoran alleged that Padeh and other TDG witnesses had lied during depositions. At the direction of the court, Corcoran undertook an investigation into the claimed misconduct. In May 2007, Corcoran provided the court with a report alleging that Padeh and other officers of TDG had committed perjury. Corcoran moved to strike Padeh's and TDG's pleadings, and sought monetary sanctions in the form of attorney and expert fees incurred during its investigation. The court scheduled an evidentiary hearing on Corcoran's motion.

In October 2007, before the hearing commenced, Padeh settled the litigation and agreed to withdraw his claims against Corcoran for the sum of $200,000. As part of the settlement, Corcoran agreed to drop its counterclaims against Padeh and its third-party claims against TDG, as well as an outside arbitration against one of TDG's officers. Corcoran also agreed to withdraw its motion seeking sanctions for the alleged perjury. Scarola did not approve of the settlement, which was negotiated by Zelma. Zelma received 41% of the $200,000 settlement as per his retainer agreement with Padeh and remitted half of that amount (i.e., 20.5% of the settlement) to Scarola in accord with the co-representation agreement between the attorneys.

In September 2009, Scarola commenced this action against Padeh alleging that it had not been fully compensated for its services. Although Scarola concedes that it received 20.5% of the $200,000 settlement, it sought to recover, inter alia, 20.5% of additional noncash benefits Padeh allegedly received in settling the case, including avoiding the monetary sanctions sought by Corcoran. In its complaint, Scarola asserted causes of action for breach of the August 3, 2006 retainer agreement, unjust enrichment and quantum meruit. The complaint also included a separate breach of contract claim alleging that Padeh had breached the retainer agreement by not paying the hourly fees for services outside the scope of the contingency fee arrangement. In his answer, Padeh asserted a counterclaim alleging that the retainer agreement was procured through duress.

The case proceeded to trial, and the jury rendered a special

verdict. First, the jury found that the retainer agreement was not the product of duress. Next, the jury found that Padeh had breached the retainer agreement by failing to fully pay Scarola its hourly fees, and awarded damages in the amount of $62,290.35. The jury found, however, that Padeh did not breach the retainer agreement by failing to account for the full value of benefits he received when he settled the litigation against Corcoran. The jury also found that Scarola was not entitled to recover in quantum meruit, but concluded that Padeh was unjustly enriched as the result of services rendered by Scarola, and awarded damages in the amount of $172,113.36.

On appeal, Padeh challenges the jury's verdict awarding damages for unjust enrichment. It is well settled that a claim for unjust enrichment does not lie where it duplicates or replaces a conventional contract claim (*see Corsello v Verizon N.Y., Inc.*, 18 NY3d 777, 790 [2012]). Thus, damages for unjust enrichment may not be sought "where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987]). On the other hand, "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract" (*Sabre Intl. Sec., Ltd. v Vulcan Capital Mgt., Inc.*, 95 AD3d 434, 438 [1st Dept 2012] [internal quotation marks omitted]).

Here, the unjust enrichment claim is precluded by the existence of the July 2, 2004 co-representation agreement between Zelma and Scarola. Although Padeh's duress claim may have called into question the validity of the August 3, 2006 retainer agreement, it is undisputed that both Zelma and Scarola considered the July 2, 2004 agreement to be an enforceable contract. Moreover, that agreement squarely covers the very subject matter of the unjust enrichment claim, i.e., the legal fees to which Scarola is entitled with respect to services provided in the action against Corcoran. It is of no consequence that Padeh himself was not a signatory to the co-representation agreement (*see Randall's Is. Aquatic Leisure, LLC v City of New York*, 92 AD3d 463, 464 [1st Dept 2012], *lv denied* 19 NY3d 804 [2012] ["there can be no quasi-contract claim against a third-party non-signatory to a contract that covers the subject matter of the claim"]).

Padeh fully preserved his argument that the cause of action for unjust enrichment should not have been submitted to the

jury. After both sides rested, counsel for Padeh sought dismissal of this claim, arguing that the existence of the July 2, 2004 co-representation agreement precluded recovery in quasi-contract. Padeh's counsel renewed his objection when the court asked for exceptions to the verdict sheet, and specifically told the court that he did not want unjust enrichment charged. Contrary to Scarola's argument, this was sufficient to preserve the issue, and a specific objection to the form of the questions on the verdict sheet was not required.

Scarola unpersuasively argues that the jury's unjust enrichment verdict can be sustained because Padeh abandoned the Corcoran action. There is no fair view of the evidence that Padeh abandoned the lawsuit. To the contrary, he pursued his claims and reached a settlement with Corcoran for $200,000 (*see Matter of Spellman*, 4 AD2d 215, 216 [1st Dept 1957] [action not abandoned when brought to definitive conclusion by settlement]). *Andrewes v Haas* (214 NY 255 [1915]) and *Mahan v Mahan* (213 AD2d 458 [2d Dept 1995]), relied upon by Scarola, are distinguishable. Those cases addressed situations where the client either refused to prosecute or prematurely discontinued an action, factors not present here. In any event, even if Scarola's abandonment theory had any merit, the proper measure of damages would be quantum meruit, not unjust enrichment (*see Andrewes*, 214 NY at 259; *Spellman*, 4 AD2d at 216). And here, the jury specifically denied any recovery based on quantum meruit.

No fair view of the evidence supports a conclusion that Padeh discharged Scarola before the litigation settled. Although Padeh informed Scarola that he would "not be paying two lawyers to represent [him]," when considered in its proper context, it is clear that Padeh was referring only to work on the sanctions hearing, and not on the main litigation. In any event, as with abandonment, the proper measure of damages where a contingency fee attorney is discharged is quantum meruit (*see King v Fox*, 7 NY3d 181, 192 [2006]), a claim the jury rejected.

We do not disturb the jury's verdict awarding $62,290.35 damages on the breach of contract claim related to the unpaid hourly fees. The August 3, 2006 retainer agreement unambiguously provides for hourly fees for services rendered that were outside the pursuit of Padeh's claims in the Corcoran action. The jury could have reasonably concluded that the work performed by Scarola on the perjury investigation was independent of Padeh's claims in the Corcoran action. Furthermore, Padeh paid various invoices that he received in connection with the perjury matter, evincing his understanding that it was not included in the

contingency arrangement. Concur—Gonzalez, P.J., Friedman, Renwick, Freedman and Richter, JJ.