■ AQ ASSET MANAGEMENT, LLC, as Successor in Interest to ARTIST HOUSE HOLDINGS INC., et al., Respondents, v MICHAEL LEVINE, Respondent, and HABSBURG HOLDINGS LTD. et al., Appellants. MICHAEL LEVINE, Cross Claim Plaintiff-Respondent, v OSVALDO PATRIZZI et al., Cross Claim Defendants, and KERRY GOTLIB et al., Cross Claim Defendants-Appellants. [990 NYS2d 465]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered April 1, 2013, which, to the extent appealed from as limited by the briefs, granted in part the motion of plaintiffs AQ Asset Management LLC, Antiquorum S.A., Antiquorum USA, Inc., and Evan Zimmermann to dismiss the counterclaims of defendants Habsburg Holdings Ltd. (Habsburg) and Osvaldo Patrizzi, unanimously modified, on the law, to reinstate the thirteenth counterclaim seeking imposition of a constructive trust against Zimmermann and Antiquorum S.A., and otherwise affirmed, without costs. Order, same court and Justice, entered April 1, 2013, which granted in part defendant Michael Levine's motion to dismiss the fourth-party complaint filed by Habsburg and Patrizzi, and certain of Habsburg's and Patrizzi's counterclaims asserted in their answer to Levine's interpleader counterclaims, unanimously modified, on the law, to reinstate the first through fifth causes of action and the first "third" interpleader counterclaim, alleging breaches of fiduciary duty, and otherwise affirmed, without costs. Order, same court and Justice, entered March 28, 2013, which granted Levine's motion for sanctions to the extent of awarding attorney's fees and costs against cross claim defendants Kerry Gotlib and Michael Haskel, unanimously modified, on the law, to deny the motion as to Haskel, and otherwise affirmed, without costs.

By an amended stock purchase agreement (SPA) effective December 9, 2005, defendants Habsburg and Patrizzi (together the sellers) agreed to sell half of the shares in a group of companies (the Antiquorum entities) to Artist House Holdings, Inc. (Artist House), predecessor to plaintiff AQ Asset Management, LLC (AQ).[1] The Antiquorum entities included plaintiffs Antiquorum, S.A. (ASA) and Antiquorum USA, Inc. Defendant Michael Levine, an attorney, provided legal counsel to the sellers, drafted the SPA and other transaction documents, and served as the escrow agent for the deal. Plaintiff Evan Zimmermann, also an attorney, helped broker the transaction and is alleged by the sellers to have been their legal counsel throughout.

The SPA provided that the sellers would receive $30 million in cash, as well as proceeds from the sale of certain inventory held by the Antiquorum entities. In order to pay the book value of the inventory, the SPA provided that ASA was to execute a promissory note obligating it to pay, to an unspecified third party, the sum of 16 million Swiss Francs (CHF) within six months of the SPA's execution date. The SPA further provided that, "[a]lternatively, Patrizzi may become personally responsible [for payment of the CHF 16 million] to any Stockholder which is entitled thereto."

The parties agreed that the CHF 16 million was to be paid from the sale of inventory on hand and owned by the Antiquorum entities as of the date of the SPA. The SPA also required Patrizzi to put the inventory up for sale before the due date of the promissory note, and provided that any funds received in excess of the CHF 16 million would belong to Patrizzi or his designees. According to the sellers, Habsburg was entitled to the first CHF 16 million in inventory sale proceeds and Patrizzi was entitled to the remainder. It is undisputed that ASA never executed a promissory note, and the sellers contend that they received no proceeds from the sale of inventory.

Patrizzi and Zimmermann also entered into a Stock/Sales Proceeds Distribution Agreement (SPDA) in which they agreed that certain shares of the Antiquorum entities, which were held in escrow for Patrizzi's benefit, would be transferred to a new entity that Patrizzi and Zimmermann would equally own. The SPDA also provided that Patrizzi and Zimmermann would equally split Patrizzi's share of the inventory sale proceeds. The SPDA, which was drafted by Levine, disclosed that Levine had a

---

**1.** A more detailed recitation of the facts and procedural history is set forth in this Court's decision on a previous appeal (*AQ Asset Mgt. LLC v Levine*, 111 AD3d 245 [1st Dept 2013]).

personal economic interest in part of Zimmermann's share of those proceeds. The agreement further stated that the parties had been advised of Levine's conflict of interest, had elected to have Levine draft the agreement nevertheless, and had been represented by independent counsel.

Patrizzi alleges that Levine and Zimmermann purposely misrepresented the contents of the SPDA to induce him to sign it. According to Patrizzi, because he does not fully comprehend written English, he did not read the document and instead relied on Levine and Zimmermann to inform him of its contents. Patrizzi alleges that Levine and Zimmermann falsely told him that Zimmermann would receive Patrizzi's shares after a period of three years. The SPDA, however, states that the shares would be transferred to an entity jointly owned by Patrizzi and Zimmermann without a three-year delay. Patrizzi further alleges that Levine and Zimmermann did not tell him that the SPDA gave Zimmermann rights to half of Patrizzi's share of the inventory sale proceeds, or that Levine had an economic interest in part of those monies. Finally, Patrizzi claims that he was never told that he should retain independent counsel.

In December 2005 and January 2006, Artist House delivered $30 million into Levine's escrow account, and various sums were subsequently disbursed. According to the sellers, in May 2006, Levine advised them that the SPA required that the inventory sale proceeds be deposited into his escrow account. In fact, the SPA did not require this. In December 2006, ASA transferred $2 million into Levine's escrow account, an amount the sellers contend constitutes a portion of the inventory sale proceeds.

In July 2007, Leo Verhoeven, Habsburg's principal, sent Levine an email requesting that he return the $2 million to ASA. In the email, Verhoeven stated that the $2 million was for other expenses pursuant to the SPA, and thus was not inventory sale proceeds. Levine, however, did not return the $2 million to ASA at that time. It is the sellers' position in this litigation that the $2 million is in fact inventory sale proceeds to which they are entitled. They admit that Verhoeven's July 2007 email was a ruse, and that he asked for the money back to avoid tax consequences to Habsburg arising from its direct receipt of inventory sale proceeds.

The sellers contend that after the $2 million was transferred to Levine's escrow account, Artist House, Levine and Zimmermann wrongfully conspired to oust the sellers from ASA. At a shareholders meeting held in August 2007, Artist House and Zimmermann relied on the SPDA's purported grant to Zimmermann to vote half of Patrizzi's shares. Using this power,

Artist House and Zimmermann gained control of the company, Patrizzi and Verhoeven were removed from the board of directors, and Zimmermann ultimately became the new CEO.

In January 2008, Levine wrote to Habsburg, Patrizzi, Zimmermann and Artist House asking whether they consented or objected to his returning the $2 million to ASA. Levine stated that he would not release the funds absent consent of all necessary parties or a judicial direction to do so. Both Patrizzi and Habsburg wrote back to Levine objecting to release of the money. In August 2010, Zimmermann notified Levine that the $2 million had nothing to do with the sale of inventory and requested its return to ASA. In October 2010, Levine released the $2 million to ASA and/or Zimmermann.

Plaintiffs commenced this action asserting various claims against the sellers and Levine, in his capacity as escrow agent. Levine then served a "summons in interpleader," answered the complaint, and asserted interpleader counterclaims against plaintiffs and the sellers. The sellers answered the complaint asserting counterclaims against plaintiffs, and answered Levine's interpleader counterclaims, asserting counterclaims against him. The sellers also commenced a "fourth-party action" against Levine. This appeal brings up for review the motion court's dismissal of a number of causes of action and counterclaims contained in the sellers' various pleadings.

The motion court correctly dismissed the second "third" interpleader counterclaim[2] alleging that Levine breached the SPA by releasing the $2 million in alleged inventory sale proceeds to Zimmermann and/or ASA. Although the SPA requires the $30 million cash component of the purchase price to be placed in escrow and then disbursed by Levine, no similar requirement exists for the inventory sale proceeds. Rather, those proceeds were to be paid directly by either a promissory note executed by ASA or by Patrizzi personally. Since the SPA imposes no obligations on Levine with regard to his receipt of the $2 million, he cannot be liable for breaching the SPA for disbursing those funds.

The sellers contend that because Levine had previously advised them that the SPA required the inventory sale proceeds to be placed into escrow, he should be equitably estopped from retracting that position. A party seeking to invoke equitable estoppel must demonstrate, inter alia, a lack of knowledge of the true facts (*River Seafoods, Inc. v JPMorgan Chase Bank*, 19 AD3d 120, 122 [1st Dept 2005]). The sellers cannot establish

---

**2.** The pleading contains two counterclaims denominated "third."

this element because, as parties to the SPA, they possessed knowledge that the terms of that contract did not require the escrowing of inventory sale proceeds.

The motion court, however, should not have dismissed the fifth cause of action in the fourth-party complaint which alleges that Levine breached his fiduciary duty based on the same $2 million disbursement. The sellers allege that Levine told them that the SPA required the escrowing of inventory sale proceeds due to them under the agreement, when in fact the SPA contained no such requirement. The sellers further allege that they transferred $2 million of such proceeds into Levine's escrow account, and that Levine disbursed those funds to Zimmermann and/or ASA over the sellers' objections. These allegations, especially in light of Levine's personal interest in Zimmermann's share of the inventory sale proceeds, sufficiently state a claim for breach of Levine's fiduciary duty as escrow agent.

The motion court should not have dismissed the thirteenth counterclaim against Zimmermann and ASA seeking the imposition of a constructive trust with respect to the $2 million. The motion court dismissed this claim based on Verhoeven's admission that his request to Levine to return the $2 million to ASA was a ruse to avoid tax liability. Although no right of action arises from an illegal contract (see Sabia v Mattituck Inlet Mar. & Shipyard, Inc., 24 AD3d 178, 179 [1st Dept 2005]), there is no allegation that any of the contracts here advanced any illegal purpose. Nor can it be determined, on this record, that the sellers' current claim that the $2 million constitutes inventory sale proceeds advances any tax avoidance scheme.[3]

The motion court properly dismissed the third counterclaim, which alleges that Artist House breached the SPA by failing to remit other inventory sale proceeds to the sellers, and that AQ is liable as its successor. The SPA imposes no duty on Artist House to disburse these proceeds to the sellers. Instead, the SPA provides two alternatives—either ASA would execute a promissory note (which did not happen), or Patrizzi would be personally liable. The counterclaim and motion papers insufficiently allege that Artist House so dominated ASA after the August 2007 ouster that it was the "alter ego" of ASA and caused it to breach the SPA. Furthermore, any breach by ASA in failing to execute the promissory note would have taken place long before the alleged domination.

---

3. Zimmermann and ASA do not contend on appeal that the elements necessary for imposition of a constructive trust are not satisfied. Nor do they cross-appeal from the motion court's sustaining of the constructive trust cause of action related to other alleged inventory sale proceeds.

The eighth and twelfth counterclaims assert unjust enrichment in connection with ASA's and Zimmerman's alleged misappropriation of the inventory sale proceeds. These claims were properly dismissed because a valid contract (the SPA) covers the subject matter of the claims (*see Scarola Ellis LLP v Padeh*, 116 AD3d 609, 611 [1st Dept 2014]). This is so notwithstanding that ASA and Zimmermann were not parties to the SPA (*see id.*). Likewise, because the sellers' rights to these proceeds stem solely from the SPA, the seventh and eleventh counterclaims for conversion were properly dismissed as being predicated on a mere breach of contract (*see Kopel v Bandwidth Tech. Corp.*, 56 AD3d 320, 320 [1st Dept 2008]).

The tenth counterclaim alleges that ASA and Zimmermann tortiously interfered with the SPA and another contract by orchestrating Patrizzi's termination. This claim was properly dismissed as time-barred, having been brought more than three years after the August 2007 ouster (*see* CPLR 214 [4]; *Turecamo v Turecamo*, 55 AD3d 455, 455 [1st Dept 2008]). To the extent the claim relates to the sale of inventory proceeds within the limitations period, the sellers cannot establish that any such sale constitutes a breach of the relevant contracts (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424 [1996] [tortious interference with contract requires, inter alia, actual breach of the contract]).

The first through fourth causes of action in the fourth-party complaint and the first "third" interpleader counterclaim, which allege that Levine breached his fiduciary duty as escrow agent or attorney, should be reinstated. There is no merit to Levine's contention that these claims are barred by the statute of limitations. "[A] cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period" (*Kaufman v Cohen*, 307 AD2d 113, 119 [1st Dept 2003]). Here, the sellers allege that Levine deceived Patrizzi into signing the SPDA by, inter alia, failing to disclose and/or misrepresenting the full benefits accruing to Zimmermann and Levine under the agreement, including Levine's personal interest in the inventory sale proceeds. These contentions sufficiently allege fraudulent conduct on Levine's part so as to warrant a six-year limitations period.

The seventh interpleader counterclaim and eighth cause of action in the fourth-party complaint seek rescission of the SPDA as against Levine. Dismissal of these claims was appropriate because Levine is not a party to the contract. Nor, as sellers assert, is Levine a third party beneficiary. Levine's stated economic interest in the inventory sale proceeds is contained in a

clause revealing his conflict of interest as drafter of the SPDA, and does not confer any enforceable rights on Levine against sellers. At most, he is an incidental beneficiary and thus is not a proper party to any rescission proceeding (*see Alicea v City of New York*, 145 AD2d 315, 317-318 [1st Dept 1988]).

The motion court correctly dismissed the ninth and tenth causes of action in the fourth-party complaint alleging legal malpractice against Levine, and the seventeenth counterclaim alleging legal malpractice against Zimmermann, as barred by the three-year statute of limitations (*see* CPLR 214 [6]; *Champlin v Pellegrin*, 111 AD3d 411 [1st Dept 2013]). These claims accrued no later than August 2007, when the sellers became aware of Levine's and Zimmermann's alleged betrayal and any attorney-client relationship had come to an end. Since the claims were not brought until, at the earliest, December 2010, when this action was commenced, they are untimely.

Contrary to the sellers' contention, the statute of limitations was not tolled by alleged fraudulent concealment (*see Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]). Any improper collaboration between Levine and Zimmermann would have come to light no later than August 2007 and thus, there could be no tolling after that date. Nor was the limitations period tolled by continuous representation (*see Matter of Merker*, 18 AD3d 332, 332-333 [1st Dept 2005]). Communications dated after August 2007 do not demonstrate that Levine and Zimmermann continued to represent the sellers. In light of the dismissal of the malpractice claims against Levine, the motion court properly dismissed the eleventh cause of action in the fourth-party complaint seeking forfeiture of Levine's legal fees.

The sixth interpleader counterclaim and seventh cause of action in the fourth-party complaint, which allege that Levine violated Judiciary Law § 487 by bringing his interpleader claims without informing the court of his purported business relationship with Zimmermann, were properly dismissed. The absence of such information in Levine's interpleader pleading does not rise to the level of "withholding of crucial information from a court" or "conceal[ing] from a court . . . a fact . . . required by law to [be] disclose[d]" (*see Melcher v Greenberg Traurig, LLP*, 102 AD3d 497, 500 [1st Dept 2013], *revd on other grounds* 23 NY3d 10 [2014]).

The sixth counterclaim for fraud against AQ and Zimmermann was properly dismissed because the allegations are insufficiently detailed to satisfy the heightened pleading requirement of CPLR 3016 (b) (*see Herencia v Centercut Rest. Corp.*, 92 AD3d 485, 486 [1st Dept 2012]).

The motion court did not improvidently exercise its discretion in awarding attorney's fees and costs against cross-claim defendant Kerry Gotlib, counsel for Habsburg and Patrizzi, based on an affidavit submitted by Gotlib in support of an earlier motion (see 22 NYCRR 130-1.1). However, fees and costs should not have been awarded against co-counsel Michael Haskel because there was no showing that he had any involvement in the drafting or submission of the affidavit.

Finally, we find no error in the motion court's decision to designate all of the sellers' causes of action and counterclaims against Levine as cross claims in the main action. However, in light of the unusual procedural posture created by the multiple pleadings in this action, we exercise our discretion to direct Levine to serve an answer to those remaining claims that have not been dismissed within 20 days of service of this order upon him with notice of entry (see CPLR 2001, 3011).

We have considered the parties' remaining contentions and find them unavailing. Concur—Moskowitz, J.P., Richter, Manzanet-Daniels, Clark and Kapnick, JJ.