400 W 59th St Partners LLC v Wyse (2025 NY Slip Op 50676(U))

[*1]

400 W 59th St Partners LLC v Wyse

2025 NY Slip Op 50676(U)

Decided on April 29, 2025

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 29, 2025
Civil Court of the City of New York, New York County

400 W 59th St Partners LLC, Petitioner,

against
James Wyse, Respondent.

Index No. 301575/2022

For Petitioner: David Haberman
For Respondent: James Wyse, pro se

Jack Stoller, J.

400 W 59th St Partners LLC, the petitioner in this proceeding ("Petitioner"), commenced this summary proceeding against James Wyse, the respondent in this proceeding ("Respondent"), seeking a money judgment and possession of One Columbus Place, Apt. N9A, New York, New York ("the subject premises") on the allegation of nonpayment of rent by a petition filed on February 7, 2022. Respondent interposed an answer with defenses and counterclaims of laches, in particular alleging that Petitioner waited too long to accept payments pursuant to the Emergency Rent Assistance Program ("ERAP") and acted in bad faith, thus hampering Respondent's chances of resolving this matter in a timely matter. The Court held a trial on April 23, 2025.
Discussion
Petitioner proved that it is the proper party to commence this proceeding; that there is a landlord/tenant relationship between the parties; that the subject premises is subject to the Rent Stabilization Law; that Petitioner is in compliance with the registration requirements of 9 N.Y.C.R.R. §2528.3 and MDL §325; that Respondent owed rent arrears; and that Petitioner demanded rent before this case commenced pursuant to RPAPL §711(2).
Petitioner submitted into evidence a one-year lease commencing March 1, 2020 with a monthly rent of $2,338.61, a one-year lease commencing March 1, 2021 with a monthly rent of $2,338.61, and a two-year lease commencing January 1, 2025 with a monthly rent of $2,402.92.
Petitioner submitted into evidence a rent breakdown showing that Respondent had a credit of $502.79 as of November 30, 2020 and that Petitioner thereafter received a payment of $35,079.15 from ERAP in October of 2024 to cover March of 2021 through February of 2022 and March 2022 through May of 2022.
Menchi Sang ("Director of Compliance") testified on cross-examination that Petitioner was looking out for a check from ERAP, not an ACH payment, which is how Petitioner received the ERAP funds eventually in this proceeding. The Director of Compliance testified on redirect [*2]examination that most of the time that Petitioner received ERAP payments, it was by a check.
Petitioner moved to amend the petition to conform with the proof.
Respondent submitted into evidence a letter from Petitioner's attorney dated April 7, 2025 stating that Petitioner received ERAP, that ERAP paid to cover $2,338.61 a month from March of 2021 through May of 2022, and that ERAP paid out on October 28, 2024.
Respondent testified that he is an entrepreneur whose company had a hard time; that he timely applied for ERAP; that Petitioner did not communicate with him or explain to him what was going on and why the payment was not accepted; that as a result of this limbo he was trying to buy time; and that he was trying to come up with funds to pay the arrears off.
Respondent testified on cross-examination that if he had been notified earlier with regard to his application for ERAP he would have been able to pay the arrears and then move out; that he did not know the total amount that ERAP would pay or any limitation on how many months ERAP would pay; that he was waiting to see what the final amount ERAP was going to pay to see how much the payment so that he would know what he had to pay; and that Petitioner sent him rent bills.
Discussion
A cause of action for nonpayment of rent must be based upon an "agreement." RPAPL §711(2). Accordingly, a landlord may only obtain a judgment against a tenant for nonpayment of rent for a time period in which there is a lease in effect. 6 West 20th Street Tenants Corp. vs. Dezertov, 75 Misc 3d 135(A)(App Term 1st Dept. 2022). The record does not contain a lease in between March of 2022 and December of 2024.
The record also shows that ERAP intended for two months of its disbursements to Petitioner, April and May of 2022, to apply to months in which there was no lease in effect. As ERAP pays for a tenant who is obligated to pay rent, L. 2021, c. 56, Part BB, Subpart A, §4(1)(a)(i), as amended by L. 2021, c. 417, Part A, and as a tenant's application for ERAP and landlord's acceptance of the payment gives rise to an "agreement," L. 2021, c. 56, Part BB, Subpart A, §9(2)(d), as amended by L. 2021, c. 417, Part A, 1614 Midwood Holdings LLC v. Tiliaeva, 2023 NY Slip Op. 23249 (Civ. Ct. Kings Co.), JSB Props. LLC v. Yershov, 77 Misc 3d 235, 242 (Civ. Ct. NY Co. 2022), the ERAP records evince an "agreement" that extended to May of 2022 as well.
To the extent that an application and acceptance of ERAP gives rise to an agreement, the peculiar facts of this case raise a question about the dates such an agreement commences and expires. The Office of Temporary and Disability Assistance ("OTDA") approved Respondent for ERAP in 2022 but Petitioner did not receive the disbursement until 2024. While intuitively such an "agreement" might be deemed to start at the same time that OTDA approved ERAP, the statute actually provides that such an "agreement" — both for a landlord to refrain from raising the rent and to refrain from starting a no-cause holdover proceeding — commences "after the first rental assistance payment is received." L. 2021, c. 56, Part BB, Subpart A, §§9(2)(d)(iii) and 9(2)(d)(iv), as amended by L. 2021, c. 417, Part A, §5 (emphasis added). Accordingly, the "agreement" that the ERAP statute confers upon parties commenced in this matter in October of 2024, which Petitioner received its disbursement from OTDA. This still leaves a gap in between June of 2022 and September of 2024 when there was no agreement.
Petitioner argues that it can still obtain a judgment against Respondent for nonpayment of rent between June of 2022 and September of 2024 because the subject premises is subject to the Rent Stabilization Law and that the terms of a landlord/tenant relationship, including a rental [*3]obligation, therefore survive the expiration of a lease, citing Gersten v. 56 7th Ave. LLC, 88 AD3d 189, 199 (1st Dept. 2011) and Lincoln Dobbs Ferry LLC v. Lekutonaj, 77 Misc 3d 140(A)(App. Term 2nd Dept. 2022).
Contrary to Petitioner's argument, however, when a landlord commenced a nonpayment proceeding against a Rent-Stabilized tenant whose lease expired and had not yet been renewed, the proceeding was defective as it was not based on an "agreement." 7 E. 14 LLC v. Libson, 81 Misc 3d 130(A)(App. Term 1st Dept. 2023),[FN1]
Fairfield Beach 9th LLC v. Shepard-Neely, 77 Misc 3d 136(A)(App. Term 2nd Dept. 2022). If an agreement to pay rent survived an unrenewed expiration of a rent-stabilized lease, then these Appellate Term cases, which are binding on this Court, are wrongly decided, which raises the question of whether the Court can possibly harmonize Gersten, supra, 88 AD3d at 199 and Lincoln Dobbs Ferry LLC, supra, 77 Misc 3d at 140(A), with 7 E. 14 LLC, supra, 81 Misc 3d at 130(A), and Fairfield Beach 9th LLC, supra, 77 Misc 3d at 136(A).
The Court in Lincoln Dobbs Ferry LLC, supra, 77 Misc 3d at 140(A), awarded a landlord a judgment for both rent and "in effect, use and occupancy" for a time period after a lease between the parties had expired. Be that as it may, the body of the decision shows that the tenant in that matter did not appeal on the basis that the lower Court had awarded the landlord a judgment for a time period in which there was no lease in effect. Rather, the tenant appealed the lower Court's decision on the basis that the Court should have granted the tenant an adjournment so as to present Tenant Safe Harbor Act ("TSHA") defenses and to challenge the Court's findings with regard to the warranty of habitability. Id. A judicial opinion is an authority only for what is actually decided. Rolfe v. Hewitt, 227 NY 486, 494 (1920), Wellbilt Equip. Corp. v. Fireman, 275 AD2d 162, 168 (1st Dept. 2000), People v. Bourne, 139 AD2d 210, 216 (1st Dept.), leave to appeal denied, 72 NY2d 955 (1988). Accordingly, Lincoln Dobbs Ferry LLC, supra, 77 Misc 3d at 140(A) is not in conflict with 7 E. 14 LLC, supra, 81 Misc 3d at 130(A), and Fairfield Beach 9th LLC, supra, 77 Misc 3d at 136(A).
The strongest language in Gerstein, supra, in Petitioner's favor reads, "[b]y law, every provision of a tenant's original rental agreement remains part of the landlord-tenant relationship imposed on the parties for the remainder of the tenant's occupancy of the unit." Gersten, supra, 88 AD3d at 199. Gersten, supra, was not a nonpayment proceeding, but an affirmative challenge to the rent regulatory status of an apartment that tenants brought against a landlord, and so Gersten does not speak to the issue at the heart of 7 E. 14 LLC, supra, 81 Misc 3d at 130(A), and Fairfield Beach 9th LLC, supra, 77 Misc 3d at 136(A) either. Indeed, parsing the very language of Gersten most favorable to Petitioner reveals the extent of its distinction from the issue in 7 E. 14 LLC, supra, 81 Misc 3d at 130(A), and Fairfield Beach 9th LLC, supra, 77 Misc 3d at 136(A).
Taken literally, a projection of "every provision" of a tenant's original lease onto "the remainder of the tenant's occupancy of the unit" would freeze the tenant's rent for "the remainder of the tenant's occupancy of the unit", which of course is not the case for a Rent-Stabilized tenancy, where rents can increase by operation of individual apartment improvements, major [*4]capital improvements, 9 N.Y.C.R.R. §2522.4, and lease renewals. N.Y.C. Admin. Code §26-510(b). Therefore, the only provision of an original lease that does not carry forward throughout the tenancy — the amount of monthly rent — is the very lease term that necessitates an agreement in order to be actionable as per RPAPL §711(2). See Jaroslow v. Lehigh Valley R. Co., 23 NY2d 991, 993 (1969), Haberman v. Singer, 273 AD2d 177, 178 (1st Dept. 2000), 71 W. 68th St., LLC v. Roach, 57 Misc 3d 144(A)(App. Term 1st Dept. 2017)(seeking payment without a lease effectively would permit a landlord unilaterally to bind a tenant to payment at a rate predicated on a continuing agreement, which renders a nonpayment proceeding predicated on a tenant's default under a lease without legal basis). Put another way, "Rent [S]tabilization is a lease-based regulatory scheme. As such, a tenant's obligation to pay the stabilized rent is dependent on the tenant's agreement to pay it." Pald Enters. v. Gonzalez, 173 Misc 2d 681, 682 (App. Term 2nd Dept. 1997).
The decisions in Gersten, supra, 88 AD3d at 199 and Lincoln Dobbs Ferry LLC, supra, 77 Misc 3d at 140(A), therefore do not render the decisions in 7 E. 14 LLC, supra, 81 Misc 3d at 130(A), and Fairfield Beach 9th LLC, supra, 77 Misc 3d at 136(A) as wrongly decided. Petitioner therefore cannot recover against Respondent for a time period when no agreement was in effect.
Not only was Respondent's rent $2,338.61 for the months in which his first two leases were in effect, but Petitioner received an ERAP payment based on this monthly rental in October of 2024, so Petitioner cannot raise the rent beyond $2,338.61 for twelve months thereafter. L. 2021, c. 56, Part BB, Subpart A, §9(2)(d)(iii), as amended by L. 2021, c. 417, Part A. Moreover, as Petitioner accepted an ERAP payment that covered the time frame from March of 2021 through May of 2022, Petitioner cannot obtain a judgment for nonpayment of rent for those months. L.2021, c.56, Part BB, Subpart A, §§6(3)(a), 9(2)(d). The months that remain are December of 2020 through February of 2021 and October of 2024 through April of 2025, ten months. Ten months at a rate of $2,338.61 adds up to $23,386.10. Crediting the $502.79 credit as of November 30, 2020 leaves Respondent with a balance of $22,883.31. Petitioner has otherwise proven its prima facie case.
Respondent interposed a defense of laches. In order to prevail on this defense, Respondent must show that Petitioner unreasonably and inexcusably delayed in asserting its cause of action that resulted in prejudice to Respondent. Mundel v. Harris, 199 AD3d 814, 815 (2nd Dept. 2021), Reif v. Nagy, 175 AD3d 107, 130 (1st Dept. 2019). Even though arrears accrued from December of 2020 through February of 2021, Petitioner did not commence this proceeding until February of 2022, a delay that supports a laches defense. Lakeview Affordable Hous., LLC v. Turner, 2020 NY Slip Op. 50163(U), ¶¶ 2-3 (App. Term 2nd Dept.). Respondent's unrebutted testimony that he lost income during the pandemic supports the proposition that he cannot pay the accumulated rent and that the delay therefore prejudiced him. A & E Tiebout Realty v. Johnson, 23 Misc 3d 1112(A)(Civ. Ct. Bronx Co. 2009), aff'd, 26 Misc 3d 131(A)(App. Term 1st Dept. 2010), Rota Holding Corp. No. 2 v. Shea, 21 Misc 3d 1127(A)(Civ. Ct. NY Co. 2008). Accordingly, three months of rent, or $7,015.83, is barred by laches, although Petitioner is still entitled to a non-possessory money judgment for this amount. 1560-80 Pelham Pkwy. Assocs. v. Errico, 177 Misc 2d 947, 948 (App. Term 1st Dept. 1998), [*5]Nunz Realty, LLC v. McBride, 40 Misc 3d 1229(A) (Civ. Ct. NY Co. 2013).[FN2]
The balance that remains is $16,370.27.
Respondent does not limit his defense to the time period of December of 2020 through February of 2021, however. Respondent argues that Petitioner's delay in responding to the ERAP approval contributed to his inability to pay insofar as Respondent as uncertain about how much he had to contribute to the rent. However, by the time that OTDA approved Respondent's ERAP application, Petitioner had already commenced this proceeding. The commencement of this proceeding gave Respondent notice that Petitioner was pursuing its cause of action for nonpayment of rent. The delays that ensued in this litigation therefore render a laches defense unavailable to Respondent once Petitioner commenced this matter. See 14 Morningside Ave HDFC v. Murray, N.Y.L.J. April 23, 2002 at 18:1 (App. Term 1st Dept.), R.M.H. Estates v. Hampshire, 13 Misc 3d 1222(A)(Civ. Ct. NY Co. 2006).
Respondent expanded on the extent to which his answer argued that Petitioner acted in bad faith by arguing in closing that Petitioner's inaction and failure to communicate with him about an acceptance of ERAP prejudiced him by rendering him unable to ascertain what he should pay in rent. Respondent stated in his closing argument that Petitioner was estopped from its cause of action.
The preponderance of the evidence does not show that Petitioner intended for Respondent to rely on a statement of Petitioner, without which Respondent cannot show estoppel. Dorothy G. Bender Foud., Inc. v. Carroll, 126 AD3d 585, 587 (1st Dept. 2015). Indeed, as Respondent applied for ERAP and as the evidence does not show any representation that Petitioner made to Respondent concerning ERAP, the record evinces that Respondent had more knowledge of the situation than Petitioner did, which defeats a defense of estoppel. AQ Asset Mgmt., LLC v. Levine, 119 AD3d 457, 460 (1st Dept. 2014).
Accordingly, it is
ORDERED that the Court awards Petitioner a final judgment against Respondent in the amount of $16,370.27, and it is further
ORDERED that issuance of the warrant of eviction is stayed through May 5, 2025 [FN3]
for Respondent to pay Petitioner $16,370.27, and on default, the warrant of eviction may issue and execute after service of a marshal's notice, with the earliest eviction date being May 6, 2025, and it is further
ORDERED that the Court awards Petitioner a money judgment in the amount of $7,015.83 against Respondent.
This constitutes the decision and order of the Court.
Dated: April 29, 2025
New York, New York
HON. JACK STOLLER, J.H.C.

Footnotes

Footnote 1:The facts of Libson, to wit, that it was a nonpayment proceeding commenced after the expiration of a Rent-Stabilized lease without an executed renewal lease, are set forth in the decision of the nisi prius Court, 7 E. 14 LLV v. Libson, 79 Misc 3d 1230(A)(Civ. Ct. NY Co. 2023).

Footnote 2:What this means is that Petitioner cannot evict Respondent for non-payment of the $7,015.83, but Petitioner can enforce the money judgment in other ways.

Footnote 3:After a judgment in a nonpayment proceeding, the issuance of the warrant can be stayed for five days. RPAPL §732(2). Five days from this writing is May 4, 2025, a Sunday. If a period of time according to which an act is to be done falls on a Sunday, the act may be done on the next business day. General Construction Law §25-a(1). The next business day after May 4, 2025 is May 5, 2025.