Patrick Moses et al., Appellants, v Scott Dunlop et al., Respondents. [64 NYS3d 214]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered July 16, 2015, which granted defendants' motion to dismiss the complaint, unanimously modified, on the law, to deny the motion as to the breach of contract claims to the extent they allege breaches of continuing obligations that accrued during the six years before the commencement of the ac-

tion, with appropriate credit for any applicable tolling periods pursuant to the parties' agreements, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered December 16, 2016, which denied plaintiffs' motion to renew certain parts of defendants' motion, unanimously dismissed, without costs, as abandoned.

Plaintiffs Patrick Moses and Kevin Kaufman, two of the three creators and executive producers of the first season of the reality television series *The Real Housewives of Orange County* (the Series), and Ventana Ventures LLC, the production company through which they provided these services, seek to recover against defendant Scott Dunlop, the third executive producer of the Series, related entities, and defendant Bravo Media LLC, for monies allegedly owed them in connection with the Series.

By Co-Production Agreement (the CPA) dated January 23, 2005, Dunlop of defendant Dunlop Group (DG) and Kaufman and Moses, of nonparty Kaufman Films (KF), agreed to exclusively produce the Series and share equally all fees, profits, and revenues generated by the Series and any sequels or spin-offs. In the spring of 2006, after meeting with Bravo, Dunlop allegedly informed Moses and Kaufman that Bravo had terminated Ventana's services as producer of the Series but retained Dunlop as a "local fixer," a limited role for which Dunlop would receive a few thousand dollars at most. Two senior executives at Bravo later confirmed to Moses that Bravo had decided to replace Ventana with another production company. Later that summer, Dunlop entered into a letter agreement (the Dunlop Agreement), with defendant Realand Productions LLC, an affiliate of Bravo, to serve as executive producer for the Series, for which he would receive, inter alia, a per-episode fee, an executive producer credit, and a share of "Modified Adjusted Gross Receipts" from the exploitation of the Series.

In January 2007, Dunlop presented Moses and Kaufman each with a settlement and release agreement. Under the terms of the release, which only Kaufman signed, Kaufman and Moses were to relinquish "any and all rights [they] may have had in the Series" and "in Ventana," in exchange for, inter alia, $30,000, and were to "release . . . Dunlop . . . from any and all claims." In the release, the parties acknowledged that they had been given the opportunity to consult with counsel and entered into the agreement "after independent investigation and in the absence of fraud, duress, or undue influence." By Termination Agreement and Release (the Termination Agree-

ment) dated June 23, 2009, between Realand, Dunlop, and Ventana Ventures Inc. (Ventana Inc.), a corporation organized during production of the Series, the parties agreed, inter alia, to terminate the Ventana Agreement, by which Bravo Company had retained Ventana to produce the Series if Bravo ordered its production, and the Dunlop Agreement.

The fraud claims, to the extent they arise from conduct that occurred in 2006, are time-barred (*see* CPLR 213 [8]). Plaintiffs failed to establish that the fraud could not have been discovered earlier (*see CSAM Capital, Inc. v Lauder*, 67 AD3d 149, 156-157 [1st Dept 2009]). At the very latest, they were on inquiry notice by January 2007, when Dunlop presented Moses and Kaufman with the settlement and release agreement—more than two years before the commencement of this action (*see* CPLR 213 [8]; *Bezoza v Bezoza*, 83 AD3d 578, 580 [1st Dept 2011]). Unlike the situation in *CSAM Capital*, plaintiffs allowed years to go by without confronting Dunlop or Bravo about any concerns they may have had in the face of Dunlop's highly publicized continued involvement in the Series, his participation in and receipt of credits for spin-offs in other locations.

To the extent the fraud claims arise from Dunlop's entering into the Termination Agreement, in 2009, the claims fail to state a cause of action since plaintiffs could not have relied upon an agreement that they were unaware of (*see generally Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]).

To the extent the breach of fiduciary duty claim arises from Dunlop's entering into the Termination Agreement, it is subject to a three-year, rather than a six-year, statute of limitations, because the fraud allegations are incidental to the claim, and only money damages are sought (*see Kaufman v Cohen*, 307 AD2d 113, 119 [1st Dept 2003]). By the time Dunlop entered into the Termination Agreement, plaintiffs had not had a relationship with the Series for years, and any alleged fraud had already occurred and was not essential to the fiduciary duty claim.

The complaint states causes of action for breaches of the CPA and the Ventana Agreement, to the extent indicated above, because the contracts impose continuing obligations, each of which can be breached, triggering a new cause of action with its own limitations period (*see Makarchuk v Makarchuk*, 59 AD3d 1094, 1095 [4th Dept 2009]; *see also Jobim v Songs of Universal, Inc.*, 732 F Supp 2d 407, 422 [SD NY 2010]; *Kermanshah v Kermanshah*, 580 F Supp 2d 247, 261 [SD NY 2008]).

We have considered plaintiffs' remaining arguments and find

them unavailing. Concur—Richter, J.P., Mazzarelli, Kahn and Moulton, JJ.