CWCapital Cobalt VR Ltd. v CWCapital Invs. LLC (2021 NY Slip Op 02487)





CWCapital Cobalt VR Ltd. v CWCapital Invs. LLC


2021 NY Slip Op 02487


Decided on April 27, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 27, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Angela M. Mazzarelli Lizbeth González Saliann Scarpulla Martin Shulman
Appeal No. 12895 Index No. 653277/18 Case No. 2019-03826


Index No. 653277/18 Appeal No. 12895 Case No. 2019-03826 

[*1]CWCapital Cobalt VR Ltd., Plaintiff-Appellant,
v
CWCapital Investments LLC, et al., Defendants-Respondents.



Plaintiff appeals from the order of the Supreme Court, New York County (Andrea Masley, J.), entered August 20, 2019, which, insofar as appealed from, as limited by the briefs, granted defendants' motion to dismiss the first and third causes of action for breach of contract, the eighth, ninth and tenth causes of action for breach of fiduciary duty, the cause of action for aiding and abetting breach of fiduciary duty, and the cause of action for unjust enrichment, to the extent premised on breach of fiduciary duty.




Quinn Emanuel Urquhart & Sullivan, LLP, New York (Jonathan E. Pickhardt, William B. Adams, Rex Lee and Blair Adams of counsel), and Ganfer Shore Leeds & Zauderer LLP, New York (Mark C. Zauderer and Grant A. Shehigian of counsel), for appellant.
Venable LLP, New York (Gregory A. Cross, Colleen Mallon Casse and Konstantina A. Calabro of counsel), for respondents.



MAZZARELLI, J. 


In 2007, plaintiff, CWCapital Cobalt VR Ltd. (Cobalt), created an investment vehicle whereby it placed its investors' money in approximately 50 different trusts holding commercial mortgage-backed securities (CMBS). The investors received collateralized debt obligations (CDOs), the collateral being the certificates issued to Cobalt by the CMBS trusts. CMBS trusts are typically structured as a series of classes, with the most senior class having the first claim on revenues generated by the underlying commercial loans and the most junior class being paid only after all the ones above it have been paid and being the first to realize losses when the loans underlying the securities go into default. The most junior class with at least 25% of its original face value outstanding at any given time is known as the "controlling class." Cobalt's strategy was to invest in certificates such that its investors had interests in the controlling classes because, in consideration for its being most vulnerable to defaulting and underperforming mortgages, the controlling class is given powerful "control rights." One of the most important of these rights is the right to appoint the controlling class representative, which, in turn, acting as agent for the holder of the control rights, can appoint and replace a special servicer. The special servicer's role is to direct and supervise the disposition of nonperforming and underperforming loans that are held by a particular CMBS trust so as to mitigate the losses suffered by the trust when loans fail and no longer generate principal and interest payments.
With respect to the trusts in which Cobalt had control rights, it entered into a collateral management agreement (CMA) with defendant CWCapital Investments LLC (CWCI) to act as controlling class representative. The CMA requires CWCI to ensure that the value of Cobalt's assets is maximized, and confirms that CWCI has an overarching and express obligation to act "with reasonable care and in good faith," with the same skill and attention that it "exercises with respect to comparable assets [*2]that it manages" for itself and others, and "in a manner consistent with the practices and procedures then in effect followed by reasonable and prudent institutional managers of national standing." CWCI also undertook an obligation to manage conflicts of interest in performance of its duties, and specifically represented in the CMA that it "[would] not cause the Issuer to enter into any transaction with the Collateral Manager or any of its Affiliates as principal unless any such transaction is entered into on an arm's length basis for fair market value."
The complaint alleges that CWCI breached the CMA, and the common-law fiduciary duty it owed to Cobalt in its capacity as collateral manager, in three distinct ways. Each category of alleged activity, in whole or in part, has to do with the actions of the special servicer CWCI selected on Cobalt's behalf, defendant CWCapital Asset Management LLC (CWCA), which is CWCI's affiliate. CWCA's duties as special servicer were set forth in agreements it entered into with the various trusts called pooling and servicing agreements (PSAs). Neither Cobalt nor CWCI was party to the CMAs. The first category of wrong identified by Cobalt has to do with the fees CWCA was entitled to collect pursuant to the PSAs. According to Cobalt, it is established industry practice, at least since 2011, for special servicers like CWCA to share the significant fees they earn from the trusts with the controlling class certificate holders who, through controlling class representatives like CWCI, hire them. CWCI represents that these fees are generated each time the special servicer is required to handle a loan that needs to be worked out in some fashion. Nevertheless, the complaint alleges, CWCI did not insist that CWCA share these fees with the class members, notwithstanding that, by 2011, that had become routine industry practice.
The second category of wrong for which Cobalt alleges CWCI is responsible to it by dint of its hiring of CWCA has to do with third-party vendors that CWCA needed to engage when its special servicing required the use of brokers and auction websites. The complaint asserts that in 2013, CWCA, to earn more than the 1% of sale price that is the typical cap for selling distressed loans or property, "spun off" from itself a new entity called CWFS-REDS, LLC (CW REDS). CW REDS would negotiate with these third-party vendors on behalf of CWCA (and, by extension, the trusts), and insist that the vendors pay it a "kickback" that would then be paid to CWCA. Cobalt claims that these actions harmed it and its investors by inflating the cost of asset dispositions, thus diminishing the amount of money in the trusts when, to the contrary, CWCA should have been seeking discounts from these vendors. Cobalt seeks to hold CWCI to account for the actions of CWCA with respect to this alleged scheme.
The third area in which Cobalt alleges that CWCI breached its duty to it is related to certain "FVP Options" conferred on Cobalt [*3]by the CMBS trusts based on Cobalt's status as the largest percentage holder of certificates in the controlling class. Specifically, Cobalt alleges that it was entitled to purchase any defaulted mortgage loan in the trust's portfolio at "fair value," a price determined by the special servicer. A lively market for these options exists, making them especially valuable to their holder. However, Cobalt alleges, CWCI and CWCA usurped these options, exercising them for their own benefit.
Defendants moved to dismiss the complaint in its entirety, both for failure to state a cause of action and because it was time-barred. With respect to the latter defense, they claimed, inter alia, that CWCA had already begun to commit the acts involving fee sharing and FVP Options more than six years before the commencement of the action in 2018, thus placing the claims based on those acts outside of the limitations periods for both breach of fiduciary duty and breach of contract claims. For the claims involving CW REDS, defendants conceded that they were timely for purposes of the breach of contract cause of action, but not for the breach of fiduciary duty claim. In opposition, Cobalt argued that defendants had a continuing obligation to it to act in accordance with the CMA and not to breach their fiduciary duty. Thus, Cobalt claimed that defendants' activities amounted to a series of wrongs, each of which gave rise to its own limitations period. Under Cobalt's theory, any claims based on activity that occurred within six years of the commencement date was therefore timely.
Defendants also made arguments addressed to the allegations themselves. As is relevant to this appeal, they claimed that Cobalt has no cause of action based on the usurpation of FVP Options because the offering memorandum by which it marketed the CDO stated that Cadim Tach Inc. (Cadim), CWCI and CWCA's former corporate parent and the company that structured Cobalt and sold it the portfolio of CMBS certificates, had "irrevocably waived" control rights "that constitute a purchase right or redemption right" for the underlying CMBS trusts. Thus, defendants argued, since Cobalt stands in Cadim's shoes as an assignee, it has no FVP Options. Defendants further argued that, even if Cobalt was not bound by Cadim's alleged waiver, its FVP Options claims and fee-sharing claims are barred by a 2010 Settlement Agreement between the CDO parties (including Cobalt and CWCI) and noteholders, in which the parties stipulated that Cobalt could not enforce any claims that existed prior to the date of the Settlement Agreement.
Defendants also asserted that the aiding and abetting claim against CWCA should be dismissed because all of the activities that form the basis of the cause of action were expressly permitted by the PSAs. Finally, defendants argued that Cobalt's unjust enrichment claims were either duplicative of its breach of contract cause of action or barred by a non-recourse provision in the CMA and that the [*4]breach of fiduciary duty claims were duplicative of the breach of contract claims.
Supreme Court, as is relevant here, granted defendants' motion to the extent of dismissing eight of plaintiff's causes of action. With respect to claims related to the failure to require fee-sharing arrangements, the court found that they were untimely on the ground that they each alleged "a single breach" that first occurred when, as alleged by Cobalt, it became market practice, no later than August 2011, for special servicers to share their fees but CWCI failed to require the same of CWCA. The court rejected the application of the "narrow" continuing obligations doctrine, finding that the doctrine may only be predicated on continuing unlawful acts and not the "continuing effects" of earlier unlawful conduct. It noted that CWCI's alleged failure to take appropriate action with respect to the special servicer did not renew the limitations period each time CWCA negotiated a transaction without a revenue sharing arrangement, since each transaction after the breach first occurred only increased Cobalt's potential damages.
With respect to the claims alleging CWCI's failure to exercise FVP Options, the court found that they were also time-barred, as they accrued in November 2007, when the offering memorandum disclosed that they were "waived" prior to the CDO's closing, again rejecting the continuing wrong exception. With respect to the tort claims alleging CWCI's failure to terminate CWCA as the special servicer for "spinning off" its affiliate, CW REDS, and engaging CW REDS to assist with CMBS property sales since 2013, the court dismissed the claims as time-barred, finding that the claims accrued in 2013. The court found that none of the fiduciary duty-based claims was saved by the discovery accrual rule, since the complaint did not allege any actual fraud.
The court also addressed defendants' arguments related to the sufficiency of the allegations, to the extent that certain claims, or portions of claims, were not barred by the statute of limitations. For example, the court held that Cobalt could not state a claim based on usurpation of its FVP Options right, deeming the waiver by Cadim to apply to it. It further held that the 2010 Settlement Agreement did not bar claims that arose after the agreement was executed. The court rejected defendants' argument that the breach of fiduciary duty claims should be dismissed as duplicative of the breach of contract causes of action. It dismissed the unjust enrichment claim against CW REDS but sustained the unjust enrichment claim against CWCA.
Cobalt argues on appeal that the court erred in failing to apply the continuing obligations doctrine because defendants' alleged misfeasance gave rise to more than one claim. Generally speaking, a claim accrues for statute of limitations purposes when "all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to [*5]relief" (Gaidon v Guardian Life Ins. Co. of Am., 96 NY2d 201, 210 [2001]). However, the mere fact that a claim has accrued and the time to bring an action on it has commenced to run does not mean that a new claim, with a new limitations period, may not arise out of a new set of facts that forms part of a series with the original wrong. Cobalt maintains that the allegations against CWCI comprise such a series of individual wrongs. Thus, it relies on cases such as Bulova Watch Co. v Celotex Corp. (46 NY2d 606 [1979]). There, a new claim, with a new limitations period, was held to have accrued each time the plaintiff, the obligee under a bond that guaranteed that the defendant roofer would make repairs necessary to ensure the watertightness of the plaintiff's roof over the 20-year life of the bond, asked the defendant, to no avail, to repair a leak. Accordingly, the plaintiff's failure to commence suit within the limitations period based on the initial leak did not bar the action. Cobalt further cites Matter of Yin Shin Leung Charitable Found. v Seng (177 AD3d 463 [1st Dept 2019]), where this Court held that the continuing wrong doctrine applied to the respondents' alleged unauthorized use of certain corporate funds, since "each [unauthorized use] required a separate exercise of judgment and authority" (177 AD3d at 464).
Defendants, and the dissent, contend that cases such as Henry v Bank of Am. (147 AD3d 599 [1st Dept 2017]) are more apposite. There, the plaintiff was unwittingly subscribed to a bank's credit protection program, which automatically charged him fees on a monthly basis. The plaintiff argued that each month's billing of fees to his account constituted a new wrong that gave rise to a new limitations period. This Court disagreed, finding that "there was no breach of a recurring duty," and that the monthly charges "represent[ed] the consequences of [the] wrongful acts in the form of continuing damages, not the wrongs themselves" (147 AD3d at 602). Defendants and the dissent also compare this case to Kahn v Kohlberg, Kravis, Roberts & Co. (970 F2d 1030 [2d Cir 1992], cert denied 506 US 986 [1992]), in which the plaintiff sought rescission of an investment advisory agreement where the defendant had failed to register as an investment advisor. The Court held that the continuing wrong doctrine did not apply, rejecting the plaintiff's position that each time the defendant exercised its advisory function without being registered, it caused a distinct violation of the Investment Advisors Act of 1940. Defendants and the dissent additionally cite to Welwart v Dataware Elecs. Corp. (277 AD2d 372 [2d Dept 2000]), in which the Court held that the defendant's failure to pay periodic dividends to the plaintiff did not create individual claims, since the true gravamen of the action was the defendant's single failure ever to issue the stock that would have given rise to the dividends.
Guided by these precedents, we must determine whether CWCI's management [*6]of Cobalt's holdings through its designee CWCA constituted a single wrong as in Henry, Kahn and Welwart or a continuous series of wrongs as in Bulova and Matter of Yin Shin Leung Charitable Found., so that Cobalt had a timely claim when it commenced this action. Defendants argue that each of the alleged wrongs happened only once: when CWCI failed to terminate CWCA for not arranging to share its fees, for using CW REDS and for failing to exercise the FVP Options for Cobalt's benefit. Cobalt, on the other hand, argues that each time CWCA failed to exercise an option, or negotiated a fee-sharing arrangement with a trust, or used CW REDS to generate a kickback, CWCI breached the CMA by not doing everything in its power to stop the activity and protect the interests of Cobalt.
We find that the continuing wrong doctrine does apply to this case. The explicit language of the CMA conferred on CWCI a continuing duty to manage Cobalt's investment. Cobalt alleges that, with respect to special servicers like CWCA, this responsibility included wielding the power not only to appoint and terminate, but also to ensure that all services being performed by the special servicer were done only to benefit the CDO investors. Essentially, the allegations describe an arrangement by which CWCI acted as Cobalt's eyes and ears with respect to the CMBS trusts and had a responsibility to do everything in its power to prevent any activities that could possibly be to Cobalt's detriment. Thus, while certainly a claim accrued the first time CWCI failed to act upon CWCA's engagement in behavior that allegedly diminished the value of its investment, there is no basis for the argument that each subsequent time CWCI failed to act did not constitute a separate, actionable, wrong. It is analogous to the scenario presented by Bulova. The first time the plaintiff in that case asked the defendant to repair a leak in its roof pursuant to the terms of the bond and the defendant did not act, a claim arose. The next time the plaintiff discovered a leak and again the defendant did not act, another claim arose. Here, the first time CWCA became entitled to a fee and did not arrange to share it with Cobalt, or appointed CW REDS to increase its fees, and CWCI failed to intervene, a claim arose. Each subsequent time a loan or property went into special servicing, this activity gave rise to a new claim. The dissent, in characterizing the limitations trigger in this case as "a one-time decision, on a specific contract date, to delegate management to CWCI," effectively ignores the fact that CWCI had a contractual obligation to manage the CMBS trust assets on an ongoing basis, "with reasonable care and in good faith." The dissent's narrow approach would unfairly shield CWCI from its responsibility to act in Cobalt's best interests on an ongoing basis and would frustrate the purposes for which Cobalt retained CWCI to act as controlling class representative.
In Henry, Kahn and Welwart, cases on which [*7]defendants and the dissent rely, the party invoking the statute of limitations owed no similar ongoing duty to the plaintiff once it had committed the actionable wrongs at issue. In Henry, the alleged wrongful activity of enrolling the plaintiff in a service he did not ask for happened once. In Kahn, the violative act of lacking registration as an investment advisor was a singular condition that could not be repeated. And in Welwart, the failure to issue stock to the plaintiff was also a single event that amounted to a single claim. Defendants argue that it would be an absurd result if the hundreds of transactions involving CWCA and CW REDS each gave rise to a different cause of action with its own limitations period, but they fail to explain why that should limit Cobalt to only one solitary claim. We note that defendants' concern is tempered by the fact that application of the continuing wrong doctrine only avails Cobalt of claims that arose within six years of the commencement of the action. It does not toll the statute of limitations for any claims outside of that time period. We further note that nothing in the record compels us to find, as defendants urge, that equitable considerations mandate that Cobalt forfeited its right to assert its claims because it sat on its hands for too long after first becoming knowledgeable of defendants' conduct.
Turning to defendants' arguments that address the allegations themselves, we first find that, even if the offering memorandum's description of Cadim's contractual waiver of purchase or redemption rights would unambiguously encompass FVP Options, it is not clear from the record that this waiver provision was intended to pass from Cadim to Cobalt. Indeed, it is possible that the operative language in the offering memorandum was intended to be a waiver of any rights Cadim might have retained after selling the certificates to Cobalt. This notion is bolstered by the fact that CMBS trustees continued to issue to CWCI, as Cobalt's appointed controlling class representative, notices that were sent only to FVP Option holders. In other words, the trusts' actions suggest that they believed that Cobalt had FVP Options. Accordingly, it is premature to hold at this stage of the proceedings that the waiver language applies to block any claim Cobalt has involving the options. To the extent that defendants argue that certain of Cobalt's claims are barred by the 2010 Settlement Agreement, we agree with Cobalt that there is no evidence that it released claims that came into existence after the 2010 Settlement Agreement.
However, the breach of fiduciary duty claims against CWCI should be dismissed as duplicative of the breach of contract claims against it. The allegations against CWCI cannot be construed as stating that its activity went beyond merely breaching the duties it had that arose out of the CMA (see William Kaufman Org. v Graham & James, 269 AD2d 171, 173 [1st Dept 2000]). Since the aiding and abetting claim against [*8]CWCA is derivative of the fiduciary duty claim against CWCI, it should be dismissed as well.
Finally, although the CMA provides that Cobalt has no recourse against any of CWCI's affiliates, the unjust enrichment claims against CWCA and CW REDS are based on breach of fiduciary duty claims against CWCI, as well as breach of contract claims. The presence of the former claims bars application of the non-recourse provision on public policy grounds (see Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-385 [1983]). Nevertheless, again, the allegations in the complaint supporting the claims for unjust enrichment are effectively the same as those supporting the claims for breach of contract and breach of fiduciary duty and should be dismissed as duplicative of those claims, as well as because the claims arise out of the CMA (see Scarola Ellis LLP v Padeh, 116 AD3d 609, 611 [1st Dept 2014]).
Accordingly, the order of the Supreme Court, New York County (Andrea Masley, J.), entered August 20, 2019, which, insofar as appealed from, as limited by the briefs, granted defendants' motion to dismiss the first and third causes of action for breach of contract, the eighth, ninth and tenth causes of action for breach of fiduciary duty, the cause of action for aiding and abetting breach of fiduciary duty, and the cause of action for unjust enrichment, to the extent premised on breach of fiduciary duty, should be modified, on the law, to deny the motion as to the first and third causes of action for breach of contract, and otherwise affirmed, without costs.
All concur except González and Scarpulla, JJ. who
dissent in an Opinion by Scarpulla, J.




SCARPULLA, J. (dissenting)
 

I respectfully dissent from the majority's decision, which holds that the continuing wrong doctrine is applicable to this action, thereby rendering timely plaintiff CWCapital Cobalt VR Ltd.'s (Cobalt) breach of contract and breach of fiduciary duty claims. I would, instead, affirm the order of Supreme Court in its entirety.
Cobalt is a Cayman Islands investment fund that was created to issue collateralized debt obligations (CDOs) to investors and invest the proceeds in commercial mortgage-backed securities (CMBS) certificates, or CDOs backed by CMBS certificates, which in turn serve as collateral to secure Cobalt's obligations. The CMBS certificates were issued by various CMBS trusts and backed by those trusts' holdings in commercial real estate loans and real estate assets.
Significantly, the majority of the CMBS certificates gave Cobalt control rights enabling it to determine how to manage the loans. Cobalt assigned the control rights, pursuant to a collateral management agreement (CMA), to its investment advisor, defendant CWCapital Investments LLC (CWCI). In accordance with its rights as controlling class representative, CWCI designated its affiliate, defendant CWCapital Asset Management LLC (CWCA), as special servicer. This action stems from CWCA's actions as special servicer[*9].
Underlying Cobalt's claims of breach of contract, breach of fiduciary duty and unjust enrichment are three types of alleged misconduct by defendants concerning fee-sharing, option assignments and kickbacks. First, Cobalt asserted that CWCA, in its capacity as special servicer, failed to negotiate fair-market revenue-sharing agreements — which were allegedly the market standard after 2008—to dispose of distressed assets. Second, Cobalt alleged that CWCI failed to exercise or assign FVP Options to Cobalt and instead arranged for self-interested sales at below market-value rates, which inured to CWCI's benefit. Third, Cobalt alleged that CWCI allowed the sale of more than $9 billion in distressed assets since 2013, which resulted in kickbacks for CWFS-REDS, LLC (CW REDS), a CWCI affiliate, totaling more than $100 million.
Because most of Cobalt's claims were based on actions that transpired many years prior to the action's commencement in 2018, these claims would be outside the applicable statute of limitations period. However, Cobalt argues that these claims are still timely due to the "continuing wrong" doctrine, which tolls the statute of limitations when there is a series of independent, distinct wrongs, as opposed to one wrong with continuing effects (see Ganzi v Ganzi, 183 AD3d 433, 433-434 [1st Dept 2020]). The continuing wrong doctrine enables every breach to be independently actionable irrespective of whether the initial breach of a continuing duty happened outside the applicable limitations period (see Moses v Dunlop, 155 AD3d 466, 468 [1st Dept 2017]).
Review of the complaint shows that Cobalt alleged a single breach of the CMA due to CWCI's failure to terminate CWCA, which failure had continuing effects, i.e., increasing damages as a result of CWCA's continued work as special servicer. Accordingly, the claims were properly dismissed as time-barred (see New York Yacht Club v Lehodey, 171 AD3d 487, 487 [1st Dept 2019], lv denied 33 NY3d 914 [2019]; Henry v Bank of Am., 147 AD3d 599 [1st Dept 2017]).
The cases relied upon by the majority fail to support its position that the continuing wrong doctrine is applicable here. For example, in Bulova, the defendant did not simply guarantee the condition/performance of the supplied roofing materials but also made a separate promise for the performance of future repair services, which the court found constituted an agreement distinct from the supply contract (see Bulova Watch Co. v Celotex Corp., 46 NY2d 606, 611 [1979]). Thus, in Bulova, the court found that a continuing duty was imposed on the defendant. In contrast, here, there is only one agreement, and only one breach is alleged.
Another case cited by the majority, Matter of Yin Shin Leung Charitable Found. v Seng (177 AD3d 463 [1st Dept 2019]), did apply the doctrine of continuing wrong to one set of claims but actually rejected it for a second set of claims. The doctrine was found to apply to claims that involved the formation [*10]of a special account, comprised of corporate funds, to pay litigation expenses, because this Court found that: 1) the disbursements from the special account "were not automatic consequences of the initial decision" to create the account; and 2) each new payment of a litigation expense necessitated a distinct "exercise of judgment and authority" (id. at 464). However, the doctrine was deemed inapplicable to claims related to rent-free dispositions of corporate properties because for each rent-free arrangement, a "single decision" was made to allow the property to be used rent free, and the loss of corporate income resulting from the arrangements "was merely a continuing effect of the initial decision" (id.). Here, there was a one-time decision, on a specific contract date, to delegate management to CWCI, and Cobalt's numerous claims concerning CWCI's special servicer all arise from that one-time decision. Thus, the claims in this case are akin to those in Yin Shin Leung, to which the doctrine did not apply.
The majority also cites to cases raised by defendants from the Second Circuit and the Second Department and finds them unpersuasive as support for rejecting the continuing wrong doctrine. While these cases are non-binding, they aptly and amply demonstrate that plaintiff's allegations here do not qualify for use of the continuing wrong doctrine. In Kahn v Kohlberg, Kravis, Roberts & Co. (970 F2d 1030, 1041 [2d Cir 1992]), cert denied 506 US 986 [1992], the plaintiff, a trustee for employee pension funds, brought suit against the investment advisor and argued that the continuing wrong theory applied because the agreement required the defendant to render continuing investment advice. The Second Circuit concluded that the parties entered into "one discrete contract;" thus claims regarding performance under the contract only affected damages without creating new causes of action (id.). Therefore, the court rejected the plaintiff's argument that each time the defendant acted as an investment adviser constituted a new violation and held that the doctrine could not be relied upon to extend the statute of limitations (id.).
The Second Department case involved allegations that the defendants breached an agreement to issue the plaintiff shares of common stock in a corporation and conversion of the dividends (see Welwart v Dataware Elecs. Corp., 277 AD2d 372 [2d Dept 2000]). The Court found that causes of action did not accrue each time that profits were diverted but rather that the limitations period commenced on the date of the initial alleged breach of the agreement "when the defendants allegedly deprived the plaintiff of his right to the shares and began diverting profits, regardless of when the damages began to accrue" (id. at 373). As in Kahn and Welwart, the professional service contract here had a definitive date, and the defendants' actions which were allegedly in breach of the CMA should accordingly be calculated from that date; a new cause of [*11]action did not arise each time defendants acted as investment advisor or special servicer pursuant to the CMA.
Contrary to the majority's analysis, this case is also analogous to Henry v Bank of Am. (147 AD3d 599 [2017], supra), another decision rejecting the continuing wrong doctrine. In that case, the plaintiff was enrolled, on specific dates, in the defendants' "Credit Protection Plan" and "Privacy Assist Service" (id. at 599-600). This Court found the continuing wrong doctrine to be inapplicable as there was no breach of a recurring duty (id. at 602). It further found that the alleged wrongs resulted from the plaintiff's enrollment dates in the defendants' programs and that the monthly billings were the consequences of the defendants' wrongful acts rather than a breach of a recurring duty (id.). Cobalt similarly alleged a single breach of the CMA due to CWCI's failure to terminate CWCA, with continuing effects, thus increasing damages as a result of CWCA's continued work as special servicer. Accordingly, the claims were properly dismissed as time-barred.
For these reasons, the decision of Supreme Court should be affirmed in its entirety.
Order Supreme Court, New York County (Andrea Masley, J.), entered August 20, 2019, modified, on the law, to deny the motion as to the first and third causes of action for breach of contract, and otherwise affirmed, without costs.
Opinion by Mazzarelli, J. All concur except Gonázlez
and Scarpulla, JJ. who dissent in an Opinion by Scarpulla, J.
Webber, J.P., Mazzarelli, González, Scarpulla, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 27, 2021